## Madden et al. v. Fleming.

' (Decided Oct. 30, 1936.)

E. W. HAWKINS for appellant Daniel Madden.

BENTON, BENTON, SMITH & LUEDEKE for appellees.

LOUIS E. ARNOLD and LAWRENCE V. DRAHMAN for all other appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal is before us from a judgment rendered against Daniel Madden by the Kenton circuit court in

favor of the plaintiff, Sara E. Fleming, suing individually and as guardian for her two infant children, for the satisfaction of a judgment for $6,000 recovered against him by her in the Campbell circuit court in May, 1930.

By her petition she alleged that the therein described property, sought to be subjected to the payment of her judgment debt, was bought and paid for by the defendant Daniel Madden; that it belonged to him and was by his direction conveyed to Robert C. Thorburn, to be held in secret trust for him as the equitable owner thereof; and, further, that this property was conveyed, upon the like trust, by the said grantee, Robert C. Thorburn, to his brother, Edwin F. Thorburn.

The defendants, Daniel Madden and Edwin F. Thorburn, answered, denying that the property was held in trust for Madden or that he was the equitable owner of it or had bought it or had paid the consideration therefor. On the other hand, they affirmatively pleaded that the property belonged to Madden's wife, Helen E. Madden, who they alleged had bought the same with funds held as her separate estate, whereupon she, not her husband, had directed her vendor to convey the same by absolute deed to the said Robert Thorburn. Further, the grantee, Edwin F. Thorburn, pleaded that he had paid no part of the consideration given for the property, but that same was entirely paid by Mrs. Madden, for whom he had agreed to hold it in trust.

By reply, the issues were joined and Mrs. Madden made a party defendant, who thereupon also answered, making substantially the same denials and allegations as had the other defendants.

Much evidence was introduced in support of these conflicting claims as to the disputed ownership of the property sought to be subjected.

Evidence for the plaintiff was in substance that the defendants Madden had married about 1902, at which time the wife had practically no separate estate, nor had since accumulated any to speak of, save and except that represented by the large amounts of money claimed to have been given her by her husband. To such end it was shown, and undenied, that Madden had, during the years 1920 to 1925, most profitably conducted in the city of Newport an illicit whisky or "bootlegging" busi-

ness from which he had realized annually large profits, totaling, it appears, some $70,000 or $80,000, which sums, together with the stocks and bonds purchased by the wife out of such profits, were (they testify) all given to Mrs. Madden by Madden and kept in a "strong box" about the house. Madden was later arrested upon the charge of unlawfully engaging in this "bootlegging" business, and upon trial therefor, in April, 1925, he was convicted and sentenced to two years' confinement in the federal penitentiary and fined in the sum of $10,000. From this sentence he appealed, and while same was pending he began negotiations looking to the purchase of the property here involved, which on September 14, 1926, were consummated by his alleged purchase and payment of $35,000 therefor. It is testified that, when interrogated by vendor's agents as to how he wished the property conveyed, he directed that an absolute deed of the property be made to one Robert C. Thorburn, which was done; that shortly after purchasing this property Madden dismissed his appeal from the sentence pending against him, took the pauper's oath, went to the penitentiary, in a short time was paroled, and returned to Newport, where, on July 14, 1928, he shot and killed Ira Fleming (the husband and father of appellees), for which he was immediately again arrested and returned to the federal penitentiary for breaking his parole.

Upon Madden's being pardoned and again returning to Newport in 1930, suit was instituted by Sara Fleming, the widow of Ira Fleming, against him, wherein she recovered a judgment for the sum of $6,000, no part of which has been paid.

This, Mrs. Fleming's later suit, was brought in equity, in the nature of a bill of discovery, in the Kenton circuit court, seeking to enforce the satisfaction of that judgment against Dan Madden, as the equitable owner of the property here involved, upon the ground charged that same was bought and fully paid for by Madden and was by his direction conveyed to and held in secret trust for him by Edwin F. Thorburn.

In further support of such claim, plaintiff introduced the real estate agents, Michael Madden and Walter Ferguson, who testified that Madden's negotiations, leading to his alleged purchase of the property involved, were had with them and that the property was

offered for sale by them to Dan Madden, because of his telling them that he had some money which he wanted to invest; that their negotiations had with him respecting his purchase of the property resulted in Madden's agreement to purchase it, at a price of $35,000, when Madden "paid them $500 in cash to bind the bargain;" that, further, Daniel Madden then told them that, because of the trouble he was in, he could not hold the property in his name (having at that time been fined and sentenced in the federal court, as stated supra), but that he would make arrangements therefor; and that, pursuant thereto, he instructed that the deed be made to Robert C. Thorburn.

On the other hand, it is testified by the defendants and their witnesses that Daniel Madden, while admitting he realized the large amounts of money, as above stated, out of his illicit whisky business, gave all of these earnings to his wife, Mrs. Madden; that she, as the donee of these large gifts, became the treasurer or holder of the family purse and therewith looked after its support and maintenance, even to the extent of giving her husband therefrom the small, particular amounts needed and requested for his clothes, haircuts, etc.; also, that during the period following his quitting the whisky business she furnished him the money asked for and needed by him in his then new occupation of "following the races."

Also, Mrs. Madden testifies, in contradiction of plaintiff's evidence, that all the negotiations leading up to the purchase of the property here involved were both suggested and conducted for her by her brother-in-law, Will Madden (not her husband, as by plaintiff's witnesses stated), who urged her purchase of this property as being both a good business location and a good investment; that her husband, Daniel Madden, was never consulted by her in these transactions and perhaps never even knew of them until sale was made, when she furnished him $500 in cash with which to bind the bargain and that she then sold some $35,000 of the stocks and bonds then owned by her, with which to make cash payment of the $34,500 balance due upon the purchase price of the property, which she directed deeded to Robert C. Thorburn, who handled the matter for her and who had agreed to hold the property in trust for her.

The learned chancellor, upon the submission of the

cause upon the pleadings and this conflicting proof, adjudged that "the property described in the petition belongs to the said defendant, Daniel Madden," and, further, "that the said defendant, Edwin F. Thorburn, is holding the title to said described property in trust only for the said defendant, Daniel Madden," and that the plaintiff, Sara E. Fleming, should be declared a lien on the property, as belonging to the judgment debtor alone.

Complaining of such finding and ruling of the court, this appeal is prosecuted.

Appellants very elaborately argue that the conveyance of the property here involved to Robert C. Thorburn (who later conveyed it to his brother, Edwin F. Thorburn) in trust for Mrs. Madden was not a fraudulent conveyance, as one made in fraud of creditors, or that, even conceding that it was purchased by Madden and wrongfully given by him to his wife, and as such was a fraudulent conveyance, such fact was not available as furnishing a ground for attacking it by the plaintiff judgment creditor, Mrs. Fleming, as same was in any event not fraudulent as to her, a subsequent creditor.

However, we do not conceive that this question, as to whether or not there was here a fraudulent conveyance to the wife, is involved, nor is it a pivotal one upon which the decision of this appeal turns, in that the petition does not charge a fraudulent conveyance of the property by the husband to the wife, nor is such question mentioned or passed upon in the judgment appealed from.

The only issue here presented, we conceive, is whether or not the defendant Thorburn holds the legal title to the property involved in secret trust for the defendant Daniel Madden, and as such can be subjected to the satisfaction of his judgment debt.

There was no conveyance here shown by Madden of any property owned by him to his wife, as an attempted fraud upon his creditors, but one alleged by his direction made to a third party, Robert Thorburn, who received an absolute deed thereto without payment made by him of any part of the consideration given therefor.

For such reason we conclude that the only question here presented is that made by the pleadings and issue joined thereon, as to whether or not this property was

purchased and paid for by Madden with his own funds and conveyed in secret trust to Thorburn for his own use and benefit. If it was so purchased, then this further question is presented: Can his equity therein be subjected to the satisfaction of the appellee's judgment debt against him, in view of section 2353, Kentucky Statutes, declaring no resulting trust shall arise in favor of one paying the consideration, where the deed is made to another with his consent

The uncontradicted evidence further showed that Mrs. Madden was, at the time this property was bought and deeded another (Robert Thorburn), apparently without debts or creditors, held title to the home given her by her husband, and had invested funds (which she claimed he gave her) in stocks and bonds, in her own name. Also, it further showed that yet another part of the money, so given her, was being then carried in bank accounts in her name and that other portions of it were invested in business ventures, also taken and carried in her name, and to the management of which the appellant gave his time and attention and was authorized to draw checks against some if not all of her bank accounts.

Such being the wife's solvent condition, there is thus disclosed no motive or need for her, had she been the buyer of the property here involved, resorting to the ruse or plan here followed of having it, upon her claimed payment of its purchase price, conveyed to a stranger to hold in secret trust for her.

On the other hand, the evidence shows that Madden (very differently circumstanced) had ample need and reason for resorting to such covert buying of the property, in view of the salesman's testimony that he had stated to him that he felt it unwise and unsafe for him at that time to take the property, purchased and paid for by him, in his own name.

Evidence of such cogency, substance, and probative effect being thus before the chancellor, it is our opinion that his finding, thus so amply supported, that the property involved was bought, paid for, and belonged to Madden, and that Edwin Thorburn was holding the title thereto in trust for him only, and in further adjudging that his equity therein was subject to the plaintiff's debt, is not to be questioned nor disturbed by us.

To such effect it was declared in the case of Matthews v. Albritton, 83 Ky. 32, the court there saying:

"Before the adoption of the Revised Statutes, * * * when a deed was made conveying real property to one person, the consideration therefor being paid by another, a trust resulted in favor of the latter which he might enforce, although the deed was so made in pursuance of an agreement between them. And then, of course, there was no question of the right of creditors by proper proceedings to subject the property thus held to the payment of debts of the cestui que trust, whether existing at the time or created subsequent to the deed. Now, however, no use or trust results except in the two cases mentioned in section 19 [chapter 63, General Statutes (now section 2353, Kentucky Statutes)]. And the question arises whether the change of the law was intended to apply to and affect the rights of creditors as they previously existed, or to be restricted in its application to the parties to the transaction.

"The reason for the change, so far as the parties themselves are concerned, is apparent. For generally the object and effect of an agreement whereby the legal title to real property is vested in one party, while the consideration is paid by another, is to defraud creditors and purchasers. Hence, it is now declared not to be the policy of the law to uphold and enforce a secret trust in favor of a person paying the consideration, who voluntarily consents for the legal title to be in another. But there is no reason why a creditor should be denied relief in equity whenever property for which his debtor has paid the consideration, and of which he has the actual use and benefit, is by a fraudulent arrangement placed beyond the reach of legal process. And unless it was the intention of the Legislature to extend the application of section 19 to creditors, and thus take from them a remedy they once undoubtedly had, it should not be done.

"By section 20 it is provided, in express terms, that such deeds shall be deemed fraudulent as against existing debts and liabilities. But it does not necessarily follow that the Legislature intended thereby to sanction such transactions as against debts and liabilities of the cestui que trust subsequently created. For if it be made to appear at any

time that real property for which a party has paid the consideration is in fact held in secret trust for his use, and that he does have the use and enjoyment of it, there is no reason why it should not be made subject to his debts and liabilities though created subsequent to the deed under which it is held. If fraudulent in the beginning as to existing debts and liabilities, the transaction continues fraudulent so long as the property is held in the same manner and for the same purpose.''

See, also, section 2355, Kentucky Statutes; Deposit Bank v. Rose, 113 Ky. 946, 69 S. W. 967, 24 Ky. Law Rep. 732; Gillum v. Kirksey, 93 S. W. 591, 29 Ky. Law Rep. 422; Louisville Tobacco Warehouse Co. v. Thompson, 172 Ky. 350, 189 S. W. 245; 30 C. J. 704, sec. 301; Schuyler on Marriage, Divorce, Separation and Domestic Relations (6th Ed.) vol. 1, sec. 551, p. 563; 12 R. C. L. 932-935, secs. 10, 11, and 12; Fretz v. Roth, 68 N. J. Eq. 516, 59 A. 676; Rogers v. Campbell, 4 Pa. Dist. R. 614, 616.

In view of such rule, now well settled and generally declared both by judicial decision and statute, we are of the opinion that the chancellor, having here found the property sought to be subjected belonged to the defendant Daniel Madden, and that the same was held in secret trust for him by Thorburn, further correctly adjudged plaintiff a lien thereon for the satisfaction of her judgment debt. Wherefore it follows that the judgment is affirmed.